588 P.2d 939

Gust PALOUKOS, Plaintiff-Appellant,

v.

INTERMOUNTAIN CHEVROLET COMPANY, an Idaho Corporation, General Motors, Inc., a Foreign Corporation, and Glen Huff, d/b/a Glen's Chevrolet, Defendants-Respondents.

No. 12645.

Supreme Court of Idaho.

Dec. 29, 1978.

John B. Kugler, Pocatello, for plaintiff-appellant.

Ralph R. Kerl, Pocatello, for defendants-respondents.

BAKES, Justice.

This appeal involves a suit by the plaintiff appellant Gust Paloukos for breach of an alleged contract with defendant respondent Intermountain Chevrolet Co., an Idaho corporation, for the purchase of a 1974 pickup truck. Intermountain does business as Glen's Chevrolet, and defendant respondent Glen Huff is its president. Intermountain is a dealer for vehicles manufactured by defendant respondent General Motors, Inc.

Paloukos brought suit against Intermountain, General Motors and Glen Huff seeking specific performance of the alleged contract and, in the alternative, damages for its breach. The district court dismissed the portion of the complaint seeking specific performance and later entered summary judgments in favor of General Motors, Glen Huff and Intermountain. On appeal, Paloukos does not contest the summary judgment entered in favor of General Motors. We affirm the summary judgment entered in favor of Glen Huff. In general, corporate officers are not individually liable for the contracts of the corporation. *See* 3A W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 1117–33 (rev. vol. 1975). *See also Benner v. State Farm Bureau Mut. Ins. of Idaho, Inc.*, 96 Idaho 311, 528 P.2d 193 (1974). Paloukos has alleged nothing which would constitute an exception to that general rule.

We turn now to the principal issues presented in this case, to wit: whether the district court erred in dismissing the portion of Paloukos' complaint seeking specific performance and whether the court erred in granting summary judgment in favor of Intermountain. We consider first the issues concerning the summary judgment, and second those concerning Paloukos' request for specific performance.

The pleadings and affidavits in the record before this Court allege the following facts with respect to the formation of the alleged contract. On November 6, 1973, Paloukos, accompanied by his son Sam Paloukos, visited Intermountain's place of business and spoke with George Rowe, a salesman for Intermountain, concerning the purchase of a 1974 ¾ ton Chevrolet pickup. They agreed to the sale of a pickup and Rowe completed a printed form. The heading on the form contained Intermountain's business name, Glen's Chevrolet Co., its address and phone number and the Chevrolet logo. Beneath the heading and in bold type was printed the caption, "WORK SHEET—This is NOT a Purchase Order." On the form Rowe handprinted his name in a space provided for the salesman's name, indicated Paloukos' name and address and described the pickup involved as a new green or yellow 1974 ¾ ton 4-wheel drive vehicle with a radio, V–8 engine and an automotive transmission. The completed form also indicates a purchase price of $3,650.00. Although there is no designated signature line on the form, Paloukos signed at the bottom of the form. The sale and the sales price were approved by Intermountain's sales manager. Intermountain did not have the pickup in stock, however, but Paloukos paid a $120 deposit and was told that the truck would be ordered for him. Five months later, in a letter dated April 11, 1974, Intermountain's sales manager informed Paloukos that "because of a product shortage" the dealership would not be able to deliver the vehicle and returned the deposit.

The first issue which must be addressed is whether there was a contract formed between Paloukos and Intermountain. The trial court granted summary judgment on this issue, concluding that under the facts as submitted to it no contract could have been formed as a matter of law. Recognizing that in a summary judgment proceeding the facts, and all reasonable inferences to be drawn therefrom, should be liberally construed in favor of the party against whom summary judgment is sought, *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 500 P.2d 218 (1972), the question is whether Idaho law compelled the trial court to rule on this record that no contract had been formed between the parties. *See Luke v. Conrad*, 96 Idaho 221, 526 P.2d 181 (1974).

Chapter 2 of the Idaho version of the Uniform Commercial Code (UCC), which is applicable to this case, I.C. § 28–2–

102, states the standard for determining whether a contract has been formed. I.C. § 28–2–204 provides:

"28–2–204. FORMATION IN GENERAL.—(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

.    .    .    .    .

"(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

The official comment to this section further explains:

"If the parties intend to enter into a binding agreement, this subsection recognizes that agreement as valid in law, despite missing terms, if there is any reasonably certain basis for granting a remedy. The test is not certainty as to what the parties were to do nor as to the exact amount of damages due the plaintiff. Nor is the fact that one or more terms are left to be agreed upon enough of itself to defeat an otherwise adequate agreement. Rather, commercial standards on the point of 'indefiniteness' are intended to be applied, this Act making provision elsewhere for missing terms needed for performance, open price, remedies and the like.

"The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement, but their actions may be frequently conclusive on the matter despite the omissions." I.C. § 28–2–204, comment.

Intermountain argues that the worksheet, the document Paloukos relies upon as a memorial of the agreement, represents only preliminary discussions and is too indefinite to constitute an enforceable contract. In this respect, Intermountain notes that the worksheet fails to specify the specific shade of green or yellow, the specific engine size, the box size and style, and other items concerning the specific kind of truck Palou-

kos desired. Intermountain's approach, however, is much too narrow. In order to have an enforceable contract, the UCC does not require a document itemizing all the specific terms of the agreement. Rather, the UCC requires a determination whether the circumstances of the case, including the parties' conduct, are "sufficient to show agreement." I.C. § 28–2–204(1). That some terms are undetermined does not defeat the existence of a contract provided the parties "intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." I.C. § 28–2–204(3). Paloukos has alleged facts which indicate that he and Rowe agreed to the sale of the pickup, that Rowe completed a form which—though not entirely complete—described the truck Paloukos desired and stated a price, that Paloukos signed the completed form, that the sale was approved by a sales manager, that Paloukos was told the truck would be ordered for him, and that Intermountain accepted and retained for several months a deposit on the truck. In our view these alleged facts could support a conclusion by a trier of fact that under I.C. § 28–2–204 the parties intended to enter into a binding contract, and these facts form a "reasonably certain basis for giving an appropriate remedy." We discuss the remedies appropriate in this case later in this opinion. We do not believe that the paucity of the vehicle description in the worksheet, as a matter of law, precludes the court from concluding that a contract was formed. One inference which could be drawn from the alleged facts is that Intermountain and Paloukos believed the agreement was sufficiently definite to permit Intermountain to order a vehicle acceptable to Paloukos. Moreover, a full development of the facts at a trial may resolve these omitted items with evidence explanative of the notations on the worksheet, evidence of additional terms not included on the worksheet, or evidence of usage of trade. See I.C. § 28–2–202.

The next issue necessary to discuss is whether the alleged contract is nevertheless unenforceable as a matter of law be-

cause of the statute of fraud provisions of I.C. § 28–2–201. The statute of frauds defense is an affirmative defense which must be specifically raised by the pleadings. I.R.C.P. 8(c). Intermountain's answer did not assert the defense of statute of frauds. In fact, it appears to be first raised on appeal at oral argument, much too late to be available to support the trial court's judgment on appeal.

■ However, since on remand the trial court may permit Intermountain to amend its answer to assert that defense, some discussion of the provision of I.C. § 28–2–201 is appropriate. *See* I.C. § 1–205; *State v. Ash*, 94 Idaho 542, 493 P.2d 701 (1971). That section provides:

"28–2–201. FORMAL REQUIREMENTS—STATUTE OF FRAUDS.—(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

. . ."

In our view, the worksheet could suffice as an indication that a contract for sale was made; the only issue is whether it was "signed by the party against whom enforcement is sought." The official comment to I.C. § 28–2–201 defines the term "signed" as "a word which includes any authentication which identifies the party to be charged . . . ." I.C. § 28–2–201, comment 1. I.C. § 28–1–201(39) defines "signed" as:

"21–1–201. GENERAL DEFINITIONS. —Subject to additional definitions contained in the subsequent chapters of this act which are applicable to specific chapters or Parts thereof, and unless the context otherwise requires, in this act:

. . . . .

"(39) 'Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing.

. . . ."

The official comment further explains:

"39. 'Signed.' New. The inclusion of authentication in the definition of 'signed' is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing." I.C. § 28–2–201, comment 39.

The worksheet relied upon here contains two symbols, either of which may be an authentication satisfying the signature requirement of I.C. § 28–2–201. First, Intermountain's business name, which is printed in the heading of the form, may satisfy the signature requirement. *See Automotive Spares Corp. v. Archer Bearings Co.*, 382 F.Supp. 513 (N.D.Ill.1974) (printed heading on invoice); *Evans v. Moore*, 131 Ga.App. 169, 205 S.E.2d 507 (1974) (printed heading on bill of sale and warranty of title); *Kohlmeyer & Co. v. Bowen*, 126 Ga.App. 700, 192 S.E.2d 400 (Ga.Ct.App.1972) (printed heading on confirmation form). Indeed, such headings are specifically mentioned in the official comment as examples of satisfactory authentications in appropriate cases. I.C. § 28–1–201, comment 39. Second, Rowe's handprinted signature in the form space for the salesman's name may also suffice as an authentication. *See Southwest Engineering Co. v. Martin Tractor Co.*, 205 Kan. 684, 473 P.2d 18 (1970) (defendant's name, handprinted, at head of docu-

ment). Questions whether either symbol was executed with the intention to authenticate the document raise factual issues not properly decided on a motion for summary judgment. In sum, the district court was not entitled to rule in granting summary judgment that the worksheet, as a matter of law, failed to satisfy the writing requirement of I.C. § 28–2–201(1).

■ Moreover, even if the worksheet did not satisfy the requirements for a writing in I.C. § 28–2–201(1), Paloukos' payment of $120, which was accepted by Intermountain though later returned, constitutes sufficient part performance to excuse compliance with the statute of frauds. I.C. § 28–2–201(3) provides:

"28–2–201. FORMAL REQUIREMENTS—STATUTE OF FRAUDS.—

.    .    .    .    .

.    .    .    .    .

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

.    .    .    .    .

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (section 28–2–606)."

The UCC is clear that where the goods are apportionable part payment permits enforcement of the contract only as to the portion of the goods for which payment has been made. *See* I.C. § 28–2–201, comment 2. However, the UCC is ambiguous with respect to a partial payment in a transaction involving a single, non-divisible item, such as an automobile. We agree with the commentators and the majority of the courts which have considered the issue that part payment for a non-divisible unit, such as an automobile, permits the party under I.C. § 28–2–201(3)(c) to prove and recover in full on the oral contract. *Lockwood v. Smigel*, 18 Cal.App.3d 800, 96 Cal.Rptr. 289 (1971) ($100 deposit for purchase of Rolls Royce); *Starr v. Freeport Dodge, Inc.*, 54 Misc.2d 271, 282 N.Y.S.2d 58 (Dist.Ct.1967) ($25 deposit for purchase of automobile); J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code

§ 2–5 at 58 (1972). *Contra, Williamson v. Martz*, 11 Pa.D. & C.2d 33 (C.P.1956). The obvious purpose of limiting enforcement of an oral contract to the extent of partial payment is to permit enforcement of that part of the contract verified by the partial performance and to avoid disputes over the quantity. In a case such as this, which involves a single, non-divisible item, there is no dispute over quantity. The partial payment and its acceptance, as is recognized by the UCC, is a sufficiently reliable manifestation of the existence of a contract that the party ought to be afforded the opportunity to prove its existence.

■ The final issue presented is whether the district court properly dismissed that portion of Paloukos' complaint which sought specific performance of the alleged contract. Under the UCC specific performance is available to a purchaser where "the goods are unique or in other proper circumstances." I.C. § 28–2–716(1). Although the UCC may have liberalized some of the old common law rules, *see* I.C. § 28–2–716, comment 1, specific performance nevertheless remains an extraordinary remedy generally available only where other remedies are in some way inadequate. *See* J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code § 6–6 (1972); *see also Sims v. Purcell*, 74 Idaho 109, 257 P.2d 242 (1953); *Bowman v. Adams*, 45 Idaho 217, 261 P. 679 (1927). In his pleadings Paloukos alleged no facts suggesting anything unique about the pickup involved. The market value of such a vehicle is readily ascertainable and Paloukos' pleadings indicate no reason why damages would not be adequate relief. Moreover, the sole remaining defendant in this case, Intermountain, is a dealer, not a manufacturer, of automobiles. Paloukos does not allege that Intermountain is in possession of a conforming pickup which it could sell him. Indeed, the record suggests quite the contrary. It is well established that the courts will not order the impossible, such as ordering the seller under a sales contract to sell to the buyer that which the seller does not have. *See Moody v. Crane*, 34 Idaho 103, 199 P. 652 (1921); 5A A. Corbin, Contracts § 1170 (1964); 2 Restatement of Con-

tracts § 368, illus. 1 (1932). We therefore affirm the district court's dismissal of that portion of Paloukos' complaint seeking specific performance.

Paloukos has requested attorney fees for this appeal citing I.C. § 12–120.[1] A prerequisite to an award of attorney fees under that section is that the party prevail. Although Paloukos was successful, in part at least, on this appeal, it nonetheless remains to be determined whether he will ultimately prevail on his cause of action for breach of contract. Should Paloukos ultimately prevail and satisfy the other requirements of I.C. § 12–120 for an award of attorney fees, the district court, in fixing the award, should of course consider the fees incurred in bringing this appeal.

Affirmed in part, reversed and remanded in part.

McFADDEN, DONALDSON and BISTLINE, JJ., concur.

SHEPARD, C. J., dissents without opinion.

---

1. The statute says in pertinent part:
   "12–120. ATTORNEY FEES IN CIVIL ACTIONS.—. . .
   "(2) In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."