### ESSEX CRANE RENTAL CORP., Plaintiff/Counterdefendant,

v.

### WEYHER/LIVSEY CONSTRUCTORS, INC., Defendant/Counterplaintiff.

Civ. No. 87–1246.

United States District Court,
D. Idaho.

May 25, 1989.

---

Lawrence E. Kirkendall, Risch, Goss, Insinger & Salladay, Boise, Idaho, for plaintiff/counterdefendant.

R.B. Rock, Denise C. Baird, Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, Idaho, for defendant/counterplaintiff.

## MEMORANDUM OPINION AND ORDER

RYAN, Chief Judge.

### I. FACTS AND PROCEDURE

In May of 1986, Defendant Weyher/Livsey Constructors, Inc., (Weyher/Livsey) leased a crane from Plaintiff Essex Crane Rental Corp. (Essex) for a minimum term of one year. On January 26, 1987, a cable which supported the boom of the crane failed, causing the death of a Weyher/Livsey employee and property damage. Essex was sued, along with others, for damages arising from the death of the Weyher/Livsey employee.

Essex brought this suit against Weyher/Livsey, seeking a declaration of rights and duties regarding (1) indemnity for the death of the Weyher/Livsey employee, (2) Weyher/Livsey's duty to obtain insurance covering Essex, and (3) Weyher/Livsey's duty to maintain and repair the damaged crane. Essex also seeks damages for the following breaches of contract: (1) failure to disclose conditions under which the crane would be operated, (2) failure to obtain insurance, (3) failure to pay rent after February 20, 1987, (4) failure to repair or pay for damage to the crane, and (5) failure to indemnify Essex.

Weyher/Livsey has counterclaimed on seven theories: (1) failure to provide a crane serviceable for twelve months, (2) breach of an implied warranty for fitness for a particular purpose, (3) breach of an implied warranty of merchantability, (4) restitution of lease overpayments, (5) breach of express contract terms and warranties, (6) negligent failure to inspect and maintain the crane, and (7) strict product liability.

Currently before the court are two summary judgment motions by Essex, and a motion for partial summary judgment by Weyher/Livsey.

## II. ANALYSIS

### A. *Formation Issues*

At the root of most issues in the pending motions is determining which document, if any, embodies the agreement between the parties. Weyher/Livsey contends that the controlling document is one of two purchase orders. Essex claims that its form lease agreement controls.

It is useful here to briefly recount the negotiations which led to the contract in this case. On or about May 12, 1986, Clayton Record, a Weyher/Livsey employee, and Robert Stork, an Essex employee, discussed the basic terms of a crane lease. Their agreement was memorialized in a handwritten document which is attached as an exhibit to Exhibit A to Weyher/Livsey's Memorandum in Support of Partial Summary Judgment. This document states "no rental agreement," which Record states in deposition meant that Weyher/Livsey would not accept an Essex lease agreement. The document also mentions a purchase order number 3039 P–02400. Essex has placed in the record uncontroverted evidence which shows that no purchase order by this number was sent to Essex.

On or about May 9, 1986, Essex began transporting the crane to Weyher/Livsey's job site. On or about May 13, 1986, Essex forwarded to Weyher/Livsey the lease agreement at issue in this case, number 03190, back-dated to May 5, 1986. Weyher/Livsey did not, and has never, signed this agreement.

After Weyher/Livsey had used the crane for about two weeks, Weyher/Livsey sent a letter to Essex advising it that Weyher/Livsey would not sign the lease agreement, and that the terms of the agreement are contained in purchase order number 3039–P02400. Again, it is uncontroverted that Essex received no such purchase order.

Weyher/Livsey refused to pay the agreed rent. Weyher/Livsey advised Essex that its policy prohibited any payments without a signed purchase order. After the crane had been used by Weyher/Livsey for about two months, Weyher/Livsey forwarded purchase order number 3039R00100 to Essex. This purchase order was signed by a Weyher/Livsey agent, and by Carl Morano, an Essex agent. However, Morano signed the purchase order with the handwritten proviso, "subject to our lease # 03190." Exhibit 1 to Exhibit E to Memorandum of Weyher/Livsey Constructors, Inc., in Support of Partial Summary Judgment, filed Sept. 16, 1988.

■ A threshold issue is whether this case is governed by the common law of contracts or the provisions of the Uniform Commercial Code ("Code"). Essex argues primarily for common law, while Weyher/Livsey argues for applying the Code.

Prior to the enactment of Article 2, the "mirror image" rule applied to sales of goods. Under that rule, a document which purported to accept an offer would be construed as a rejection and counteroffer if the terms of the acceptance differed in any way from the terms of the offer. This created problems in commercial transactions, where merchants on either side of a deal would send to the other parties forms containing boilerplate slanted in their favor (known as the "battle of the forms"). By operation of the mirror image rule, the net result of a battle of forms would often be that no contract was formed.

Article 2 addresses this and similar problems in several ways, two of which are at issue here. First, the Code does away with the need for a formal offer and acceptance. Rather, a contract can be found to exist even where it is impossible to determine when the contract was made. Idaho Code § 28–2–204(2) (1980). Also, "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." Idaho Code § 28–2–204(1) (1980).

Second, the Code does away with the mirror image rule, providing that an ac-

ceptance which varies from an offer may nonetheless operate as an acceptance. Idaho Code § 28–2–207 (1980).

The battle of the forms is not a situation unique to sales of goods. It can occur in any commercial transaction. In fact, this case is an example of the phenomenon in a lease of goods. When the policies which gave rise to a Code provision apply in a transaction other than a sale of goods, Idaho courts will look to those provisions in determining the applicable law. *All–States Leasing Co. v. Bass,* 96 Idaho 873, 878, 538 P.2d 1177, 1182 (1975). Because this case presents the very situation covered by the rules on formation of contracts in the Code, this court will look to the Code to find applicable rules of law.

### 1. *The handwritten memorandum.*

■ The first document which arguably controls is the Stork–Record memorandum. If this were the controlling document, it would be advantageous to Weyher/Livsey, since it apparently incorporates a Weyher/Livsey purchase order by reference. However, it is not.

Uncontroverted evidence has been placed in the record which shows that Stork had no authority to bind Essex. Also, Record has stated in his deposition that he could not bind Essex, except on occasions when Smit was not available, in which case Record would sign "for Jacob Smit." Record did not sign the May 12th document on Smit's behalf. Because of this lack of authority on both sides, it would also be improper to construe the memorandum as an offer by either side.

### 2. *Purchase Order Number 3039 P–02400.*

■ This purchase order could arguably be construed as an offer, which Essex accepted by delivering the crane to Weyher/Livsey. However, an offer must be communicated to the offeree. J. Calamari & J. Perillo, *Contracts* §§ 2–15 at 56 (2d ed. 1977) (offeree cannot accept unless he knows of the offer). It is uncontroverted that Essex was not sent this purchase order.

It might be argued that this purchase order was a counteroffer to the offer embodied in the lease agreement when it was mentioned in the letter replying to the lease agreement. As further discussed below, a purported acceptance with terms which differ from the offer can sometimes be construed as a counter-offer, and sometimes the terms of the counteroffer will be considered terms of the contract. Idaho Code § 28–2–207. However, Idaho Code § 28–2–207(1) requires that an acceptance to operate in this manner must be sent to the offeror, which this purchase order was not.

### 3. *Lease Agreement Number 03190.*

■ This is the best candidate for the contract in this case. It is the first communication in the record which qualifies as an offer, in that it states terms; it was sent out by Carl Morano, comptroller for Essex, who appears to have had authority; and it was communicated to the other party.

■ The fact that the lease agreement constituted an offer is not affected by the fact that it may have been sent to Weyher/Livsey after the crane was delivered. The delay, if any, was less than a week. Morano has stated in an affidavit that it is common in his business to ship a crane before a formal agreement is forwarded to the lessee, given the time pressures inherent in the construction industry. (It is undisputed that the Weyher/Livsey project in this case was subject to such pressures.) The policy of the Code is to make the law reflect the realities of modern commercial transactions. Idaho Code § 28–1–102(2)(a), –(b) and comment 1 (1980). Thus, if there were a common law rule that an offer must precede performance to be considered an offer, it would have been abrogated by the Code in this case.

■ Once the lease agreement is construed as an offer, it must be determined whether the offer was accepted. Under the Code, an offer which does not indicate otherwise can be validly accepted in any manner which is reasonable in the circumstances. Idaho Code § 28–2–206(1)(a)

(1980). Acceptance of performance can constitute acceptance. *See Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho 740, 588 P.2d 939 (1978). In that case, it was held that a truck dealer's retention of a deposit by a buyer was sufficient to show the existence of a contract for the sale of a truck.

It might be argued that, despite their use of the crane, Weyher/Livsey showed its lack of assent to Essex's offer by refusing to make lease payments until a purchase order was executed. However, in *Paloukos* there is no indication that the dealer did anything to perform its part of the agreement. Thus, the fact that Weyher/Livsey used the crane, standing alone, can establish acceptance.

█ As shown above, Smit's letter to Morano in May could not constitute a counteroffer. However, it arguably constitutes a rejection of Essex's offer. Weyher/Livsey must fail on this point. Smit's letter nowhere stated that the terms of the lease agreement were unacceptable. It merely stated (1) that on-site employees could not sign the agreement, and (2) that the contract was already embodied in another document (purchase order number 3039 P–02400).

A similar sort of situation existed in *Paloukos*. In that case, the parties filled out a "worksheet" for purchase of a truck. The worksheet clearly stated, in bold print, that it did not constitute a purchase order. *Id.* at 742, 588 P.2d at 541. Nonetheless, in light of the dealer's acceptance of the deposit, the court held that the worksheet could provide at least some of the terms of the contract.

The worksheet in *Paloukos*, like Smit's letter, did not unambiguously reject the proposed contract terms. It merely stated that a particular document in question did not embody the terms of the contract. From *Paloukos* one can extract the following rule: When a party accepts benefits under a contract, but also submits a document which is, at best, an ambiguous rejection of the offer, his actions will speak louder than his words. This seems to be the thinking of *Paloukos*, and also a reasonable rule.

In summary, this court believes that the offer embodied in the lease agreement was accepted, despite the fact that it was not signed, by virtue of Weyher/Livsey's acceptance of benefits under the agreement.

### 4. *Purchase Order Number 3039R00100.*

█ This purchase order was sent to Essex approximately two months after Weyher/Livsey had started using the crane. It was signed by both parties. Because it was signed by both parties, it is suggested that it embodies the agreement. However, Essex's signature (by Morano) clearly stated that the purchase order was subject to the terms of lease agreement number 03190. Second, as discussed above, by this time Weyher/Livsey had accepted the offer embodied in the lease agreement by using the crane for two months.

Weyher/Livsey suggests that purchase order number 3039R00100 should be viewed as an acceptance which supplies additional or conflicting terms to the offer under Idaho Code § 28–2–207. This section provides:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is suffi-

cient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this act. Idaho Code § 28–2–207 (1980).

Purchase order number 3039R00100 does not satisfy this statute. First, Idaho Code § 28–2–207 applies during the formation of a contract. As discussed above, Weyher/Livsey had already accepted by using the crane for two months. Thus, a contract had already been formed. By Weyher/Livsey's argument, the contract could be accepted, and then later accepted again by an acceptance which varies from the terms of the offer.

Second, and somewhat related, Idaho Code § 28–2–207(1) requires that the acceptance with additional terms must be sent to the offeror within a reasonable time. This court finds as a matter of law that two months after the lessee takes possession of the property is not reasonable.

Finally, the additional terms were not accepted. Idaho Code § 28–2–207(2)(c) states that the additional terms do not become part of the contract if the offeror notifies the offeree of his objection to the additional terms within a reasonable time. Morano's signature on the purchase order states clearly his belief that the purchase order is subject to lease agreement number 03190. For the same reason, purchase order number 3039R00100 cannot be taken as a modification of the contract under Idaho Code § 28–2–209, since it was not accepted.

Even if it is assumed that purchase order number 3039R00100 is a valid acceptance with varying terms under Idaho Code § 28–2–207, it would not mean that the terms of the purchase order control. Under Idaho law, if an acceptance includes terms which are in conflict with the terms of the offer, the conflicting terms cancel out, and the court supplies terms based upon other sources under the Code, such as course of dealing and trade usage. *South-*

*ern Idaho Pipe & Steel Co. v. Cal–Cut Pipe & Supply, Inc.,* 98 Idaho 495, 567 P.2d 1246 (1977). In this case, the course of dealing between the parties establishes that the terms of the lease agreement are controlling.

5. *Course of performance.*

■ Under Idaho law, when a contract calls for repeated occasions for performance on either side (such as monthly lease payments, in this case), a course of performance which is accepted or not objected to is relevant in interpreting the contract. Idaho Code § 28–2–208(1) (1980). Also, as stated above, when the terms of an acceptance vary from the terms of an offer, the conflicting terms cancel out, and the court refers to other sources, such as trade usage and the parties' course of dealing.

There is quite a dispute in the record whether the custom in the crane rental industry calls for indemnification by the lessor or the lessee, or by neither. However, it is not necessary to resolve this dispute because the parties' course of performance controls over trade usage. Idaho Code § 28–2–208(2) (1980). The course of performance here clearly establishes that the terms of the lease agreement are controlling.

Essex makes much of the fact that each invoice for rental payments referred to the lease agreement number, and Weyher/Livsey paid the invoices without objecting to the reference. This is certainly evidence that the lease agreement is controlling, though it alone is an insufficient basis for this court to hold as a matter of law that the course of dealing requires application of the lease agreement's terms.

The more telling facts relate to repairs performed on the crane by Essex. Paragraph 8 of the lease agreement provides that Essex would supply parts and labor during normal working hours to repair damage resulting from normal wear and tear. The purchase order relied upon by Weyher/Livsey makes no reference to repairs on the crane.

In late July of 1986, Essex billed Weyher/Livsey for overtime work on the crane which was performed in early July. The letter accompanying this invoice made specific reference to paragraph 8 of the lease agreement. Weyher/Livsey objected to paying this invoice, but did not question that the lease agreement was controlling.

Even more telling, Essex made minor repairs to the crane in early December of 1986. Essex billed Weyher/Livsey for the costs of this repair. Weyher/Livsey responded that it should not have been billed, in part because the repairs were necessitated by normal wear and tear. In making this objection, Weyher/Livsey was specifically referring to the terms of the lease agreement, as no other purported agreement made any reference to repairs by Essex due to normal wear and tear. Thus, Weyher/Livsey did not merely acquiesce in performance under the lease agreement. It actively invoked its rights under that agreement.

The timing of these two repair incidents is also important. The first repair invoice was sent at almost precisely the same time that the purchase order was signed by both parties. Although the purchase order should have been fairly fresh in the parties' minds, Weyher/Livsey made no objection to Essex's invocation of rights under the lease agreement. The second invoice was sent several months after purchase order number 3039R00100 was signed, and Weyher/Livsey actually relied upon the lease agreement. This course of performance entirely supports the preceding analysis showing that the lease agreement is controlling. Thus, if there were any question as to which document controls, the course of performance shows as a matter of law that the lease agreement is controlling.

**B.** *Essex's First Motion for Partial Summary Judgment*

This motion seeks dismissal of Weyher/Livsey's counterclaims.

**1.** *Abandoned claims.*

Weyher/Livsey has apparently abandoned two counts of its counterclaim.

Count Four seeks restitution of overpaid lease payments. Weyher/Livsey has stated that it has abandoned this claim.

Count Two, which claims breach of an implied warranty of fitness for a particular purpose, also seems to have been abandoned, although not explicitly. To establish the existence of an implied warranty of fitness for a particular purpose, Weyher/Livsey must show that (1) Essex had reason to know, at the time of contracting, that the crane in question was to be used for a particular purpose, and (2) that Weyher/Livsey relied on Essex's skill or judgment in selecting the crane. Idaho Code § 28–2–315 (1980).

■ According to the deposition of one Clayton Record, a Weyher/Livsey employee, Record selected the crane in question based upon his own expertise and analysis of Weyher/Livsey's needs. Since Weyher/Livsey did not rely on Essex to select the crane, there is no implied warranty of fitness for a particular purpose. All of this was argued in Essex's opening brief. Weyher/Livsey has not responded to these arguments. The court will grant summary judgment on this claim, both on its merits and on the fact that it has been abandoned.

**2.** *Contested claims.*

**(a)** *Count One.*

■ Count One alleges that the crane provided was not serviceable for a period of twelve months. The bare allegations of the counterclaim on this theory are a bit unclear, but the arguments opposing Essex's motion flesh it out. Weyher/Livsey's purchase order includes a warranty that the equipment purchased will be serviceable for a period of twelve months. There is dispute as to whether the crane was in fact serviceable, which is discussed more fully under Counts Six and Seven. However, as discussed above, the purchase order is not the controlling document. Since that is the case, the express warranty covered by Count One does not apply.

**(b)** *Count Three.*

Count Three alleges a breach of the implied warranty of merchantability. Essex

argues that, assuming the applicability of the Code, there can still be no liability on this claim. Under Idaho Code § 28–2–314, a warranty of merchantability will be implied when the seller of goods is a merchant with respect to that type of goods.

Essex first argues that it is not a merchant. For purposes of Article 2, a "merchant" is,

> a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Idaho Code § 28–2–104(1) (1980). In arguing that it is not a merchant, Essex relies upon *All–States Leasing Co. v. Bass,* 96 Idaho 873, 538 P.2d 1177 (1975). In that case, it was held that a lessor of car washing equipment was not a merchant under the Code.

■ Weyher/Livsey distinguishes *All–States Leasing* from the case at bar, and correctly so. There, the lessor's actual role in the transaction was merely to finance the purchase of the leased equipment. In the case at bar, Essex is in the business of leasing cranes. In the course of that business, Essex performs substantial maintenance work on the cranes. A reasonable trier of fact could certainly find that Essex is a merchant.

Essex's second argument is that the crane here was merchantable. Idaho Code § 28–2–314(2) provides that "[g]oods to be merchantable must be at least such as ... pass without objection in the trade under the contract description; and ... are fit for the ordinary purposes for which such goods are used ..." Idaho Code § 28–2–314(2)(a), –(c) (1980). (Other subsections deal with packaging, labeling, and fungible goods, and thus are inapplicable.)

Essex points out that Weyher/Livsey accepted the crane after inspection. Thus, it is argued that the crane "passed without objection." However, this fact alone does not show the crane to have been merchantable. Idaho Code § 28–2–314(2) states that merchantable goods *at least* fulfill the conditions there stated. Also, Essex's argument puts the issue in subjective terms: If this buyer accepts the goods, they are merchantable. The statute is written in objective terms—that is, what would pass "in the trade." Also, there is no support in the Code for the proposition that acceptance of goods constitutes a waiver of the warranty of merchantability.

The Code does state that an examination of goods to the extent desired by the buyer excludes any warranty as to those defects which would have been revealed by inspection. Idaho Code § 28–2–316(3)(b) (1980). There are two defects, discussed below, which have been alleged—the small size of the cable drum (14–inch where a 30–inch drum would be required) and the lack of "keepers" on the sheaves—which would be obvious to inspection, and thus no claim for lack of merchantability could be made as to those defects.

Thus, if the Code applies to this transaction, there could be a merchantability claim. The Idaho Supreme Court has held that the implied warranty provisions of Article 2 provide the appropriate rules of law in the case of a lease of goods. *All–States Leasing Co. v. Bass,* 96 Idaho at 877–78, 538 P.2d at 1181–82.

**(c)** *Counts Six and Seven.*

These claims are for negligence and product liability. Essex's primary ground for granting summary judgment is that Weyher/Livsey has failed to point to any defects in the crane, or any negligence. However, the record contains facts which could support at least three defects or instances of negligence. First, according to the *Rigging Manual,* an authoritative treatise, the drum on the crane was too small for the cable used. Second, it is possible that the cable jumped out of the sheaves, and that this was partly caused by the lack of "keepers" on the sheaves. Finally, there is some evidence that Essex did not properly lubricate the cable on the crane while it was still in Essex's possession.

Against these claims, Essex argues that the accident was caused by the fact that the crane was being used improperly at the time of the accident, and that the crane was subjected to excessive use. These are issues of comparative fault, which are inherently questions of fact.

■ Although there are issues of fact concerning negligence and product liability, summary judgment for Essex is still appropriate, based upon the terms of the lease agreement. Paragraph 11 of the lease agreement states: "Lessor shall not be liable in any event for any loss, delay or damage of any kind or character resulting from defects in or inefficiency of the Equipment hereby leased or accidental breakage thereof." Exhibit C to Exhibit B to Memorandum of Weyher/Livsey Constructors, Inc. in Support of Partial Summary Judgment, filed Sept. 16, 1988.

■ In *Idaho Power Co. v. Westinghouse Elec. Corp.*, 596 F.2d 924 (9th Cir. 1979), the Ninth Circuit considered the effect under Idaho law of a disclaimer barring liability in excess of the purchase price, "whether in contract, in tort, under any warranty, or otherwise." *Id.* at 925. The court held that this language effectively disclaimed claims based upon negligence or strict product liability in a commercial transaction. *Id.* at 926–28. Since Idaho law gives effect to such blanket disclaimers as against negligence and strict product liability claims, paragraph 11 is an effective disclaimer of Counts Six and Seven of the counterclaim.[1]

### C. *Essex's Second Motion for Summary Judgment*

This motion seeks a holding of liability on Essex's claims.

Of the duties owed by Weyher/Livsey which are alleged in the complaint, four are embodied in the lease agreement: (1) indemnity for the death of the Weyher/Livsey employee, (2) Weyher/Livsey's duty to obtain insurance naming Essex as an insured, (3) Weyher/Livsey's duty to maintain and repair the damaged crane (other than repairs occasioned by normal wear and tear), and (4) duty to pay rent after February 20, 1987. The fifth theory, which alleges that Weyher/Livsey did not disclose the conditions under which the crane would be operated, is not supported by any duty stated in the agreement. Thus, summary judgment as to this last claim should be denied.

■ Since, as discussed above, the lease agreement controls, liability is clearly established as to all of the claims except Weyher/Livsey's duty to repair and maintain the crane. Though it is hotly disputed, it appears that the accident in question, and resulting damage, may have resulted because the crane supplied by Essex was defective, in which case it may be improper to require Weyher/Livsey to pay for repairs to the crane. Summary judgment for Essex will have to be denied on this claim.

Weyher/Livsey has presented two major arguments against Essex's indemnity claim. First, as they point out, Idaho's statute of frauds, Idaho Code § 9–505, requires that a contract to answer for the debt of another be in writing, signed by the party against whom it is to be enforced.

■ It is unclear whether an indemnity contract is a surety agreement as contemplated by Idaho Code § 9–505. Even if it were, the statute of frauds is inapplicable. Part performance of an unwritten agreement will satisfy the statute of frauds. *Hoffman v. S V Co.* 102 Idaho 187, 628 P.2d 218 (1981); *see Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho at 754, 588 P.2d at 943. Thus, the fact that Weyher/Livsey used the crane and made lease payments will satisfy the statute.

■ Second, Weyher/Livsey's liability for the death of its employee is governed by Idaho's Workman's Compensation law. Under that scheme, an employer cannot be required to indemnify a third party for

---

**1.** Paragraph 11 is not an effective disclaimer of the warranty of merchantability because (1) it does not mention merchantability, and (2) it is not conspicuous since it is in the same type size, style, and format as the remainder of the lease agreement. Idaho Code § 28–2–316(2) (1980); *Glenn Dick Equipment Co. v. Galey Constr. Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975).

injury to an employee, unless the employer and third party expressly agree to the contrary. Idaho Code § 72–209(2) (1973); *Pocatello Indus. Park Co. v. Steel West, Inc.,* 101 Idaho 783, 621 P.2d 399 (1980). Paragraph 11 of the lease agreement expressly states that the lessee will indemnify the lessor against any loss or damages on account of personal injury or property damage. Thus, there is an express agreement, and Idaho Code § 72–209(2) is not violated.

### D. *Weyher/Livsey's Motion for Partial Summary Judgment*

This motion seeks three holdings: (1) that Weyher/Livsey owes no duty of indemnity, (2) that Essex owes Weyher/Livsey a duty of indemnity, and (3) that Essex is liable for breach of express warranties. Given the analysis of the contract formation issues above, these contentions are fairly easy to dispose of.

The duty of indemnity owed by Weyher/Livsey to Essex is found in the lease agreement. The duty of indemnity owed by Essex to Weyher/Livsey is found in the purchase order. Finally, the express warranties referred to are found in the purchase order. Because the lease agreement is controlling, and the purchase order is not, Weyher/Livsey's motion must be denied in all respects.

### III. CONCLUSION AND ORDER

Based upon the foregoing, and the court being fully advised in the premises,

IT IS HEREBY ORDERED that Essex's motion for partial summary judgment should be, and is hereby, DENIED as to Count Three of Weyher/Livsey's counterclaim.

IT IS FURTHER ORDERED that Essex's motion for partial summary judgment should be, and is hereby, GRANTED as to Counts One, Two, Four, Six and Seven of Weyher/Livsey's counterclaim.

IT IS FURTHER ORDERED that Essex's second motion for summary judgment should be, and is hereby, DENIED as to Essex's claims based upon (1) Weyher/Livsey's alleged failure to disclose the conditions under which the crane would be operated, and (2) Weyher/Livsey's duty to repair and maintain the crane.

IT IS FURTHER ORDERED that Essex's second motion for summary judgment should be, and is hereby, GRANTED as to Essex's claims based upon (1) Weyher/Livsey's duty to indemnify Essex, (2) Weyher/Livsey's duty to provide insurance naming Essex as an insured, and (3) Weyher/Livsey's duty to continue paying rent after February 20, 1987.

IT IS FURTHER ORDERED that Weyher/Livsey's motion for partial summary judgment should be, and is hereby, DENIED.