Richard OWEN d/b/a Clark's Greenhouse and Clark's Greenhouse, Inc., Plaintiff,

v.

The KROGER COMPANY, Defendant.

No. IP94–2103–C B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 2, 1996.

---

John C. Trimble, Lewis & Wagner, India-
napolis, Indiana, Thomas L. Tarvin, Tarvin &

Alexander, Connersville, Indiana, for Plaintiff.

Michael Rosiello, John R. Maley, Barnes & Thornburg, Indianapolis, Indiana, for Defendant.

### ENTRY

BARKER, Chief Judge.

This contract dispute is before the court on the parties' cross-motions for partial summary judgment. For the reasons discussed below, both motions for partial summary judgment are **denied.**

## I. BACKGROUND [1]

■ Plaintiff Clark's Greenhouse ("Clark's") is a commercial grower of flowers, located in Connersville, Indiana. Clark's is a family owned and operated business, owned and operated by Richard Owen ("Owen") since 1979.[2] Clark's plants, cultivates, harvests, and sells a variety of flowers and vegetables, specializing in the cultivation and sale of irises.

Defendant Kroger is a retail grocery store chain that does business in Indiana. Kroger, through its Northern Floral division, purchased irises from plaintiff for approximately ten years prior to and including the 1992–1994 growing seasons.[3] Both parties characterize their business relationship prior to the 1992 season as a "long and good relationship". (McIntosh Dep., at 125; Pltf. Opp. Brief, at 5). Prior to the 1992 growing season, the parties did not enter into any formal purchase contracts; rather, they usually discussed any agreements as to purchase price and quantity over the phone. (Complaint, at ¶ 4; McIntosh Dep., at 72–74).

Beginning in the summer of 1991, plaintiff met with Kroger representatives to discuss Kroger's anticipated needs for the next year's iris season. As the season approached, Kroger sent "prebooks" to plaintiff approximately two weeks prior to each four-week buying period, specifying the number of irises Kroger would need in that buying period. (R. Owen Dep., at 204). Kroger then followed up with a final purchase order sent by fax to plaintiff the week prior to each week's delivery. (R. Owen Dep., at 205).

In the summer of 1991, Owen met with Joyce McIntosh, Senior Flower Buyer at Northern Floral, and Lew Stroh, then Floral Plant Manager at Northern Floral, to discuss the upcoming 1992 growing season. (McIntosh Dep., at 72; R. Owen Dep., at 9–10). During that meeting, Stroh indicated to Owen that Kroger wanted more flowers in 1992 than it had purchased in 1991. (R. Owen Dep., at 10). Owen asked for an estimate of how many irises Kroger would need for the 1992 season, and Stroh wrote the following on a memopad:

| | | |
|---|---|---|
| 1st period | 12–29/1–25 | 60,000/wk |
| 2nd period | 1–26/2–22 | 60,000/wk |
| 3rd period | 2–23/3–22 | 70,000/wk |
| 4th period | 3–23/4–19 | 70,000/wk |
| 5th period | 4–20/5–17 | 30,000/wk |
| 6th period | 5–18/5–31 | 20,000/wk |

will want 15 ct boxes

(McIntosh Dep., at 80; Exh. G ("1991 memo")). Kroger actually purchased fewer than the 1.2 million irises that it had indicated, in the 1991 memo, it would need during the 1992 season.[4]

In the summer of 1992, Owen, McIntosh and Stroh met to discuss Kroger's needs for the upcoming 1993 season. At this meeting, they discussed Owen's frustration that Kroger had not purchased all the irises that he expected it to purchase in the 1992 season, based upon the figures Stroh had provided in

---

1. Kroger argues that plaintiff failed to provide a "statement of genuine issues" as required by Local Rule 56.1, and that we must therefore accept as true, Kroger's Statement of Material Undisputed Facts. Plaintiff has incorporated its statement of genuine issues, with citations to the record, into its opposition brief. (Pltf. Opp. Brief, at 22–24). This satisfies the requirements of L.R. 56.1 See, Mirocha v. TRW, Inc., 805 F.Supp. 663, 675 (S.D.Ind.1992).

2. For the sake of convenience and clarity, we will refer to Owen and Clark's collectively as "plaintiff".

3. The iris growing season in Indiana lasts from January until June. (Def.Exh. A, Rog. 6).

4. The parties do not state exactly how many irises Kroger did purchase in 1992, but they agree that it was less than the amount indicated on the 1991 memo.

the 1991 memo. (McIntosh Dep., at 115–16). McIntosh has testified that she told Owen that Kroger could not commit to a guaranteed weekly number due to the nature of its business. (McIntosh Dep., at 117). Owen said that he needed a number so that he would know what to do for the 1993 season. (*Id.*) McIntosh claims that she felt uncomfortable giving an estimate that far in advance, but that Stroh advised McIntosh to "give him about half of what we did last year". (*Id.*, at 118). McIntosh then wrote the following on a memopad:

| 1st period | 30,000/wk |
|---|---|
| 2nd period | 30,000/wk |
| 3rd period | 35,000/wk |
| 4th period | 55,000/wk |
| 5th period | 30,000/wk |

(*Id.*, at 118; Exh. H. ("1992 memo")).[5] Kroger actually purchased fewer than the 720,-000 irises it had indicated, in the 1992 memo, it would need during the 1993 season.[6]

During the 1993 season, Owen wrote to Kroger to complain about Kroger's 1993 level of purchases. (Def.Exh. L). When Kroger responded denying any contractual obligation, Owen requested a meeting to address "future commitments". (Def.Exh. M, N). In the summer of 1993, a meeting took place between Richard and Jasen Owen (Richard Owen's son, and Secretary of Clark's Greenhouse), McIntosh, and Ben Pauley, who had replaced Stroh as Floral Plant Manager at Northern Floral. (Def.Exh. A, Rog. 4). At that meeting, McIntosh and Pauley stated that Kroger would need a lower number of irises for the 1994 season, totalling 280,000 stems for the year. (R. Owen Dep., at 75–77; Def.Exh. I). Plaintiff, for the first time in any season, wrote a detailed confirmation letter setting forth the number of irises re-quested for the 1994 season and asking Kroger to respond within five days if it disputed those amounts. (*Id.*).

Plaintiff brings this action under the Uniform Commercial Code ("UCC"), claiming that Kroger breached a contract to buy fixed amounts of irises in 1992, 1993, and 1994. Kroger moves for partial summary judgment with regard to the alleged contracts for the 1992 and 1993 seasons, arguing that even if contracts did exist between plaintiff and Kroger for certain minimum purchases of irises in 1992 and 1993, those contracts are unenforceable as a matter of law because they do not satisfy the requirements of the statute of frauds, as codified at Ind.Code § 26–1–2–201.[7] Plaintiff responds to Kroger's motion, and submits its own motion for summary judgment, arguing that the 1991 and 1992 memos, upon which plaintiff relies as evidence of the alleged 1992 and 1993 contracts, do satisfy the statute of frauds.[8]

## II. SUMMARY JUDGMENT STANDARD

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.Pro.* 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the non-moving party on the particular issue. *Methodist Medical Center v. American Medical Sec., Inc.*, 38 F.3d 316, 319 (7th Cir.1994).

---

5. The 1992 memo also included the following, which was later added to the memo by Owen:

| 1st week Jan | Northern Floral |
|---|---|
| 30,000 × 8 = | 240,000 |
| 35,000 × 4 | 140,000 |
| 55,000 × 4 | 220,000 |
| 30 000 × 4 | 120,000 |
| | 720,000 bulbs |

(R. Owen Dep. at 36; McIntosh Dep., at 112).

6. The parties do not state exactly how many irises Kroger purchased from plaintiff in 1993, but they seem to agree that it was less than the amount indicated in the 1992 memo.

7. Kroger admits that it entered into a fixed, written contract with plaintiff for the 1994 iris season. Both parties move for summary judgment only with regard to plaintiff's breach of contract claims for the 1992 and 1993 seasons.

8. Both parties agree that this lawsuit involves an alleged contract for the sale of goods for a price of more than $500, and is thus subject to the requirements of the statute of frauds. (I.C. 26–1–2–201; Complaint, at ¶ 3; Def. Brief, at 11).

In considering a summary judgment motion, a court must draw all justifiable inferences in the light most favorable to the opposing party, and must resolve any doubt against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991); *Becker v. Tenenbaum–Hill Associates, Inc.*, 914 F.2d 107, 110 (7th Cir.1990). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), the nonmoving party may not simply rest on the pleadings, but must affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial. *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1302 (7th Cir.1991). Conclusory allegations by a party opposing a motion for summary judgment cannot defeat the motion. *Smith v. Shawnee Library System*, 60 F.3d 317, 320 (7th Cir.1995).

"The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See, Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989).

### III.  ANALYSIS

The narrow question before the court is whether the writings created on "from the desk of . . ." memopads during the 1991 and 1992 meetings between Owen, Stroh, and McIntosh, satisfy the requirements of the statute of frauds.[9] The statute of frauds states in relevant part:

> a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

I.C. § 26–1–2–201(1). Thus, for any contract between Kroger and plaintiff to be enforceable, (1) there must be a writing sufficient to indicate the existence of a contract; and (2) that writing must be signed by an authorized agent or broker for Kroger.[10]

Both parties focus exclusively on the signature requirement, and do not raise the question of whether the writings are "sufficient to indicate the existence of a contract". Kroger argues that the writings produced by Lew Stroh and Joyce McIntosh at the 1991 and 1992 meetings were not "signed" and therefore do not satisfy the statute of frauds. Plaintiff argues that, while lacking what in layman's terms would normally be considered a "signature", the memos are "signed" for the purposes of satisfying the statute of frauds.

### A.  Signature requirement

Where the only written evidence of an alleged contract bears no signature of the party against whom enforcement of the contract is sought, the contract is unenforceable. I.C. § 26–1–2–201(1); *Nucor v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 585 (7th Cir.1994); *Lee v. Voyles*, 898 F.2d 76, 78–79 (7th Cir.1990). Plaintiff relies upon the 1991 and 1992 memos as evidence of contracts for

---

9. At one point, plaintiffs assert that the real issue in this case is "whether a contract existed, not whether there was fraud in the writings that exist for the 1992 and 1993 growing seasons." (Pltf. Opp. Brief, at 12). However, if there is no writing sufficient to satisfy the statute of frauds, the question of whether a contract existed is not a material issue which would preclude the entry of summary judgment. *Great Western Sugar Co. v. Lone Star Donut Co.*, 567 F.Supp. 340, 344 (N.D.Tex.1983), *aff'd*, 721 F.2d 510 (5th Cir. 1983).

10. There are several statutory exceptions to the Statute of Frauds; however, the parties agree that they are inapplicable in this case. (Pltf. Opp. Brief, at 24 — ". . . the Defendant correctly asserts that the Plaintiff cannot invoke any of the statutory exceptions to the U.C.C. Statute of Frauds").

the 1992 and 1993 seasons. Those memos are handwritten on sheets of paper from a memopad with the "Northern Floral Center" logo pre-printed in the upper left-hand corner, and the words "from the desk of Lew Stroh" (1991 memo) and "from the desk of Joyce McIntosh" (1992 memo) pre-printed in the upper right-hand corner. The memos both contain, in handwritten form, a series of dates followed by corresponding numbers, representing the quantity of irises Kroger anticipated it would need for each buying period. (Def.Exh. G, H).

Neither writing contains what is typically considered a "signature", that is, a handwritten name. However, plaintiff correctly states that a "signature" for the purposes of the statute of frauds need not be a handwritten name, but can include "any symbol executed or adopted by a party with present intention to authenticate a writing." I.C. § 26–1–1–201(39); *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1182 (7th Cir. 1991) (" 'signed' in statute-of-frauds land is a term of art, meaning executed or adopted by the defendant . . ."). The official comment to § 26–1–1–201(39) provides further insight with regard to what constitutes a "signature" under the statute of frauds:

> 39. "Signed." New. The inclusion of authentication in the definition of "signed" is to make clear that as the term is used in this Act a complete signature is not necessary. Authentication may be printed, stamped or written; it may be by initials or by thumbprint. It may be on any part of the document and in appropriate cases may be found in a billhead or letterhead. No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.

U.C.C. Official Comment, I.C. § 26–1–1–201(39).

Plaintiff contends that the pre-printed Northern Floral logo and the pre-printed words "from the desk of Lew Stroh" and "from the desk of Joyce McIntosh" are "symbols" which satisfy the statute of fraud's signature requirement. Both the U.C.C. official comment and caselaw lend support to plaintiff's argument. In *Monetti*, the Seventh Circuit held that a memorandum written on defendant's letterhead satisfied the writing and signature requirements of the UCC statute of frauds. *Monetti*, 931 F.2d at 1185. Similarly, the Fourth Circuit has held that a written sales brochure met the signature requirement because defendant's trademark, which appeared on the brochure, was sufficient to authenticate the writing. *Barber & Ross Co. v. Lifetime Doors, Inc.*, 810 F.2d 1276, 1280 (4th Cir.1987), *cert. denied*, 484 U.S. 823, 108 S.Ct. 86, 98 L.Ed.2d 48 (1987); *see also, First Valley Leasing, Inc. v. Goushy*, 795 F.Supp. 693 (D.N.J.1992) (invoice contained letterhead with name and address of defendant's employer, which satisfies New Jersey statute of frauds); *Paloukos v. Intermountain Chev. Co.*, 99 Idaho 740, 588 P.2d 939, 943 (1978) (under the Idaho Statute of Frauds, Idaho Code § 28–2–201(1) [which is identical to Ind.Code § 26–1–2–201(1) ], a business name printed in the heading of a form may satisfy the signature requirement); *Cox Engineering v. Funston Mach. & Supply*, 749 S.W.2d 508, 511 (Tex. App.1988) (plaintiff's letterhead, including address, appearing at top of invoice, provides authentication that identifies the party to be charged and thus satisfies the statute of frauds' signature requirement); *Southwest Engineering Company v. Martin Tractor Co.*, 205 Kan. 684, 473 P.2d 18 (1970) (where memorandum contained, in hand-printed form at top left corner, name of seller and its manager, and manager admittedly prepared the memorandum, memorandum was "signed" for purposes of statute of frauds).

There is also some authority indicating that the presence of a symbol such as a defendant's letterhead on a document does not always satisfy the signature requirement. At least one district court has held that under the UCC, a pre-printed name on an instrument is not a "signature". *First National Bank v. Ford Motor Credit Co.*, 748 F.Supp. 1464, 1467–68 (D.Colo.1990). *First National* is easily distinguished from the case at hand because it dealt not with the issue of whether documents offered as evi-

dence of a contract had been authenticated with a signature, but with the issue of whether a drawee had accepted, by signing, a draft. The court held that a pre-printed name on the draft was not a signature for the purposes of accepting the drafts, analogizing the company's pre-printed drafts to an individual's pre-printed personal checks, "which do not ordinarily constitute the signature of either the individual or the drawee bank". 748 F.Supp. at 1469. Kroger also cites to a treatise which states that the name on letterhead or at the top of a printed form ordinarily is not a "signature". *Anderson on the U.C.C.,* § 1–201:309, at 340–41. Anderson opines that, although the official comment contemplates that "in appropriate cases," a signing may be found in a letterhead, such an appropriate case would have to be one in which there was a course of prior dealings between the parties such that it was understood that "anything sent by one party to the other on the sender's letterhead would be lived up to by the sender." *Id.* However, in the preceding section, Anderson states that "[t]he name of a party printed in the heading of a business form may be a 'signature' provided the necessary authenticating intent is present." *Id.,* § 1–201:308, at 340.

We conclude that pre-printed wording such as the corporate logo and "from the desk of . . ." symbol located at the top of the 1991 and 1992 memos can satisfy the statute of frauds signature requirement. In order to determine if that wording does in fact satisfy the signature requirement in this case, we must determine whether Stroh and McIntosh intended to authenticate the memos by using the pre-printed memopad sheets. Kroger admits the authenticity of the documents insofar as Stroh and McIntosh admit that they created the memos and that the memos accurately reflect their "guesstimates" as to Kroger's need for irises in the upcoming growing season. Kroger denies, however, that by using the pre-printed memopads, Stroh and McIntosh intended to "authenticat[e] the

[memo] as a legally effective instrument." *F.D.I.C. v. Victory Lanes,* 158 B.R. 617, 623 (E.D.Va.1993).

The question whether a signature was executed with the intention to authenticate a document raises factual issues not properly decided on a motion for summary judgment. *Paloukos,* 588 P.2d at 944; *Jerry Harmon Motors v. First Nat. Bank,* 472 N.W.2d 748, 753–54 (N.D.1991). ("The sufficiency of a memorandum to constitute a contract meeting the requirements of the statute of frauds is a question of law," but "[t]he determination whether or not the party intended to authenticate the document by the typewritten 'signature' is a question of fact."). Accordingly, the question of whether the 1991 and 1992 memos satisfy the signature requirement of the statute of frauds is appropriately left to the jury, and both motions for partial summary judgment are **denied.**

### B. *Sufficiency of writings to indicate existence of contract.*

Even if we were to find, at this stage, that the 1991 and 1992 memos did satisfy the signature requirement, our inquiry would not end there. The statute of frauds requires not only that the writings on which plaintiff relies be signed by Kroger, but also that those writings be sufficient to indicate the existence of a contract. This requirement is not a stringent one; the comment to § 26–1–2–201 explains that "[a]ll that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." U.C.C. Official Comment; Ind.Code § 26–1–2–201; *Monetti,* 931 F.2d at 1182 ("All that is required is a document that provides solid evidence of the existence of a contract."). Nonetheless, having seen the writings in question, we have serious doubts as to whether the 1991 and 1992 memos can satisfy this requirement.[11] That issue was not

---

11. *See, Monetti,* 931 F.2d at 1182 (notes made in preparation for a negotiating session do not satisfy statute of frauds; whereas memorandum stating that an agreement had been reached, making some changes to that agreement to "represent more clearly our current position regarding the agreement", and stating that "both parties would like to have a written and signed agreement . . ." is sufficient to indicate existence of contract); *Barber & Ross,* 810 F.2d at 1280 (writings were sufficient to indicate existence of a requirements contract where they promised that defendant

raised by the parties on their motions for partial summary judgment, and is thus not before the court at this time.

## C. *Promissory estoppel*

 Plaintiffs also attempt to invoke the doctrine of promissory estoppel as a "non-statutory defense" to the statute of frauds. Plaintiff did not raise the promissory estoppel issue in its complaint, and we have denied plaintiff's motion to amend its complaint to add a promissory estoppel claim. (See, Order denying plaintiffs' motion for leave to amend complaint, dated April 16, 1996). Accordingly, plaintiff's promissory estoppel arguments are not properly before the court and we need not consider them on the merits. *Nucor*, 28 F.3d at 588 (district court properly rejected promissory estoppel claim raised in response to motion for summary judgment because defendant had failed to raise it as a counterclaim); *Evans v. Fluor Distribution Co.*, 799 F.2d 364, 367 (7th Cir. 1986) (party cannot avoid summary judgment based on issue not properly pled in district court); *Agustin v. Quern*, 611 F.2d 206, 209 (7th Cir.1979) (when estoppel not pled, it cannot form basis for challenge to summary judgment).

## IV. CONCLUSION

The 1991 and 1992 memos, upon which plaintiff relies as evidence of contracts with Kroger, contain symbols which are capable of satisfying the statute of frauds' signature requirement. However, material issues of fact remain with regard to whether those symbols were executed or adopted with the requisite intent to authenticate the memos. Furthermore, the fundamental question of whether the memos sufficiently indicate the existence of a contract between plaintiff and Kroger has not been addressed by the parties. Accordingly, both parties' motions for partial summary judgment are **denied.**

would meet the monthly needs of plaintiff); *Goushy*, 795 F.Supp. 693 (invoice which gave

specific description of each item and indicated price terms was sufficient).